## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GEMA USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-02053-TWP-KMB |
| | ) | |
| FIRST IN FINISHING INC., | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This patent and trademark infringement case is before the Court on Cross-Motions for Partial Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Gema USA, Inc. ("Gema") (Filing No. 82), and Defendant First in Finishing Inc. ("FIF") (Filing No. 85). Gema is a manufacturer of powder coating equipment, and FIF repairs, services, and sells Gema products and off-brand powder coating products that works with Gema products. Gema alleges that FIF's off-brand products infringe five design patents, and that FIF's website advertising its products and services infringe five trademarks. Gema has sued FIF for patent and trademark infringement, trademark counterfeiting, unfair competition, and false advertising.

Gema moves for partial summary judgment that the patents are not invalid; that FIF has infringed the patents; and that FIF has infringed the trademarks. FIF cross-moves for partial summary judgment that Gema cannot recover pre-suit damages for patent infringement because Gema failed to mark its products with patent information under 35 U.S.C. § 287; that FIF is protected from liability for trademark infringement under the "nominative fair use defense"; and that laches and/or acquiescence bar Gema from recovering monetary damages for its Lanham Act claims. For the reasons explained below, the motions are **granted in part** and **denied in part**.

# I.    RELEVANT BACKGROUND[1]

Gema is a well-established company in the powder coating industry and manufactures a variety of powder coating products, including automatic and manual powder coating guns, booths, hoppers, control units, powder feed systems, and related replacement parts like nozzles, tubes, hoses, and pumps (Filing No. 83 at 6). FIF's founder, Monte McClung ("Mr. McClung") worked for Gema for nineteen years until 2009. After parting with Gema, Mr. McClung noticed that Gema customers needed their products repaired and serviced, so he founded FIF. Both Gema and FIF are headquartered in the Indianapolis area, sell products nationwide, and maintain websites promoting their products nationally (Filing No. 82-8 ¶ 4; Filing No. 82-26 at 423:24–425:4).

In addition to repairing and servicing Gema products, FIF began selling refurbished Gema products and "aftermarket" products manufactured in China that work with Gema products (the "Accused Products") (Filing No. 83 at 9). FIF launched a website in 2013, which advertises its services and products, including the Accused Products (Filing No. 85-2 ¶ 10). Gema has been aware of FIF's business since its founding, *id.* ¶ 11, and from at least May 2017 until April 2019, FIF was an approved "Integrator" of Gema products, meaning that FIF could purchase Gema units directly from Gema at a discount (Filing No. 85-5 at 2–3; Filing No. 90-10).

In this action, Gema alleges that the Accused Products infringe five United States Design Patents claiming ornamental designs for: a manual powder coating gun, Patent Nos. D667,080 (the "'080 Patent") (Filing No. 1-1), D657,015 (the "'015 Patent") (Filing No. 1-2)[2]; a nozzle, Patent No. D670,356 (the "'356 Patent") (Filing No. 1-3); a powder coating injector, Patent No. D670,786 (the "'786 Patent") (Filing No. 1-4); and an automatic powder coating gun, Patent No. D725,740

---

[1] Specific facts relevant to the parties' disputes will be raised as the Court addresses each dispute.

[2] The '015 Patent is the same as the '080 Patent, except for the addition of color (Filing No. 83 at 22).

(the "'740 Patent") (Filing No. 46-1) (collectively, the "Gema Patents"). Gema also alleges that FIF has infringed five registered trademarks (the "Gema Trademarks") by selling and offering for sale products bearing these trademarks on FIF's website (Filing No. 83 at 13–14). Gema's affiliate, Gema Switzerland GmbH, is the owner of the Gema Patents and Gema Trademarks, and Gema is the exclusive licensee in the United States (Filing No. 82-8 ¶ 3).

Gema initiated this action in 2022, alleging infringement of the Gema Patents (Counts 1–4 and 9), and infringement of the Gema Trademarks, trademark counterfeiting, unfair competition, and false advertising under the Lanham Act (Counts 5–8) (Filing No. 46). In 2024, the parties filed the pending cross-motions for partial summary judgment, which became ripe on June 28, 2024. On October 25, 2024, the Court held oral argument on the parties' cross-motions (Filing No. 115).

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific

factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "[The court's] review of the record requires that [it] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arb. Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.   DISCUSSION

Gema moves for summary judgment on three issues: that FIF infringed five asserted Gema patents; that the asserted patents are not invalid; and that FIF infringed five Gema trademarks (Filing No. 82). In their cross-motion for summary judgment, FIF seeks judgment as a matter of law on three issues: that Gema cannot recover damages for patent infringement predating this

lawsuit for failure to properly mark its practicing products; that the nominative and fair use defense protects FIF from liability under the Lanham Act; and that the doctrines of acquiescence and/or laches bar Gema from recovering damages on its Lanham Act claims (Filing No. 85). The Court will first discuss the summary judgment issues related to the Gema Patents, and then issues related to the Gema Trademarks.

## A.      The Gema Patents

Gema seeks summary judgment that the Gema Patents are not invalid and that they are infringed by the Accused Products, and FIF requests summary judgment that Gema is barred by 35 U.S.C. § 287 from recovering pre-suit damages for patent infringement because it failed to appropriately mark its products with patent information. The Court will address the question of non-invalidity, followed by infringement, and then damages.

### 1.      Non-Invalidity

Patents are presumed valid, so the patent challenger, FIF, bears the burden of proving that each Gema Patent is invalid by clear and convincing evidence. 35 U.S.C. § 282; *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061–62 (Fed. Cir. 2004).

#### a.      The '080 and '015 Patents

Gema argues that FIF cannot prove that the '080 and '015 Patents are invalid as anticipated. FIF responds that the '080 and '015 Patents are invalid as obvious.

##### i.      Anticipation

In its Preliminary Invalidity Contentions, FIF asserts that the '080 and '015 Patents are anticipated by four prior art references: the OPTISELECT Trademark Specimen (the "OPTISELECT Specimen"), which corresponds to U.S. Patent No. 7,617,998 ("Mauchle"); U.S. Patent No. 8,584,973 ("Mather"); European Patent Application Pub. No. EP0899015A1 ("Ransburg"); and U.S. Patent Application Pub. No. 2002/0125349 ("Michael") (Filing No. 52 at

5). To prove anticipation, the patent challenger must show that "the same invention, including each element and limitation of the claims, was known or used by others before it was invented by the patentee." *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed.Cir.1995). Anticipation is a question of fact but may be decided on summary judgment if there are no genuine disputes of material fact. *Oney v. Ratliff*, 182 F.3d 893, 895 (Fed. Cir. 1999).

Gema argues that the OPTISELECT Specimen and Mauchle are not substantially the same as the designs in the '080 and '015 Patents, and that Mather, Ransburg, and Michael are even more dissimilar to the '080 and '015 Patents than the OPTISELECT Specimen and Mauchle (Filing No. 83 at 22). Gema pictorially identifies several "notable differences" between the claimed ornamental designs and the products illustrated in Mauchle and the OPTISELECT Specimen, *id.* at 23–24, summarizing that "the gun claimed and depicted in the '080 and '015 Patents is more elongated, streamlined and contoured than that shown in Mauchle and in the OPTISELECT Specimen." *Id.* at 24. Gema also includes representative photos of Mather, Ransburg, and Michael to highlight these differences. *Id.* at 83. FIF does not dispute Gema's arguments regarding anticipation (Filing No. 86 at 19). Gema has shown that FIF cannot prove, by clear and convincing evidence, that the '080 and '015 Patents are anticipated, so it is entitled to summary judgment.

### ii. **Obviousness**

Gema argues that the Court should not even consider FIF's obviousness arguments because FIF did not raise obviousness in its Preliminary Invalidity Contentions. However, FIF *did* raise obviousness (Filing No. 52 at 4–8 ("FIF contends that each of the Asserted Patents is invalid under at least 35 U.S.C. §§ 102 *and/or 103*. . . . The references in the below-identified and attached charts . . . alone, or in combination with other references identified in these Preliminary Invalidity Contentions, at least render obvious the claims of the Asserted Patents . . . . To the extent that the above-identified references do not anticipate the claims of the Asserted Patents, each individual

reference would, alternatively, render obvious one or more of the claims of the Asserted Patents. . . . ." (emphasis added))). FIF therefore provided Gema with fair notice that it would argue that the Asserted Patents are invalid as obvious. *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2014 WL 4477932, at *2 (N.D. Ill. Sept. 10, 2014) (requiring that infringement contentions provide fair notice of the scope of infringement theories).

Gema next argues that FIF's obviousness argument fails because it is solely supported by attorney argument (Filing No. 92 at 11–12). Although FIF must offer more than conclusory assertions to show obviousness, it does not need expert testimony. In *KSR International Co. v. Teleflex, Inc.*, the United States Supreme Court "instruct[ed] courts to take a more 'expansive and flexible approach' in determining whether a patented invention was obvious at the time it was made. In particular, the Court emphasized the role of 'common sense.'" *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238 (Fed. Cir. 2010) (internal citation omitted) (quoting *KSR*, 550 U.S. at 415). "Rigid preventative rules that deny factfinders recourse to common sense . . . are neither necessary under our case law nor consistent with it." *KSR*, 550 U.S. at 421; (Filing No. 92 at 12 (citing pre-*KSR* decisions)). FIF may therefore base its argument solely on the Gema Patents, prior art, and "common sense." *Wyers*, 616 F.3d at 1239 ("[T]he legal determination of obviousness may include recourse to logic, judgment, and common sense, in lieu of expert testimony."); *see Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009) ("[T]he use of common sense does not require a 'specific hint or suggestion in a particular reference,' only a reasoned explanation that avoids conclusory generalizations.").

The Court therefore turns to the merits of FIF's obviousness argument. 35 U.S.C. § 103. To show obviousness, a patent challenger must show, by clear and convincing evidence, that a person of ordinary skill in the art (a "POSA") "would have been motivated to combine the teachings of

the prior art references to achieve the claimed invention, and that the [POSA] would have had a reasonable expectation of success in doing so." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009). Obviousness is a legal conclusion based on underlying factual findings. *Id.* (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)). The only factual issue raised by FIF is whether there was sufficient motivation for a POSA to combine prior art references. *Wyers*, 616 F.3d at 1237. The motivation to combine prior art is a question of fact but may be addressed on summary judgment in appropriate cases. *Id.* at 1238–39.

FIF asserts that Mauchle and the OPTISELECT Specimen create "basically the same" overall visual impression as the '080 and '015 Patents, and Mather and Michael "have many shared features" with the claimed designs (Filing No. 86 at 19–21). FIF then concludes "that it would be obvious to a powder coating gun designer of ordinary skill, who wanted to create the overall effect or visual impression of the embodiment of the '080 Patent and the '015 Patent," to combine features of the prior art "such that, to the ordinary observer, the combination thus created would present much the same visual impression as that presented by the designs shown in the '080 Patent and the '015 Patent." *Id.* at 22. Gema replies that FIF fails to identify the specific features of the prior art references that a POSA might combine and improperly bases its argument on hindsight (Filing No. 92 at 12–13). The Court agrees with Gema.

FIF must provide "some record-supported reason (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified [prior art references] to create the same overall appearance as the claimed design." *LKQ Corp. v. GM Global Tech. Operations LLC*, 102 F.4th 1280, 1299 (Fed. Cir. 2024). "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 418; *see In re Deuel*, 51 F.3d 1552, 1559 (Fed. Cir. 1995)

("'Obvious to try' has long been held not to constitute obviousness."); *Unigene Lab'ys, Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011) ("Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination. Rather, obviousness requires the additional showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention." (citation omitted)).

FIF offers no reason, common sense or otherwise, why a POSA would select and combine elements of the prior art references, except "to create the overall effect or visual impression of the embodiment of the '080 Patent and the '015 Patent." (Filing No. 86 at 22). The Court agrees with Gema that "[a]n analysis that uses the patents themselves to provide the alleged motivation to combine constitutes improper hindsight." (Filing No. 92 at 13); *see Sanofi-Aventis U.S., LLC v. Dr. Reddy's Lab'ys, Inc.*, 933 F.3d 1367, 1375 (Fed. Cir. 2019) ("[C]harting a path to the claimed [design] by hindsight is not enough to prove obviousness."); *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1367 (Fed. Cir. 2017) ("[W]e cannot allow hindsight bias to be the threat that stitches together prior art patches into something that is the claimed invention."); *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012) ("[T]he proper analysis requires a form of amnesia that 'forgets' the invention and analyzes the prior art and understanding of the problem at the date of the invention."); *accord Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 714 F. Supp. 3d 652, 738 (N.D.W.V. 2024) ("There was nothing in the prior art that would have pointed a POSA to the [claimed material] absent hindsight in working backwards from the claimed invention."); *Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, No. 20-cv-428, 2024 WL 4212945, at *11 (W.D. Wash. Sept. 17, 2024) (finding defendant did not provide clear and convincing evidence of obviousness because defendant's expert "provide[d] no specific analysis as to how or why" a POSA

would select and combine prior art references). FIF has failed to raise a genuine dispute as to whether a POSA would have been motivated to combine the prior art references in such a way that would render the '080 and '015 Patents obvious. *Wyers*, 616 F.3d at 1238–39. Gema has therefore shown that FIF cannot carry its burden of proving obviousness by clear and convincing evidence.

Gema's motion is **granted** as to non-invalidity of the '080 and '015 Patents.

### b. The '356 Patent

Gema argues that FIF cannot prove that the '356 Patent is invalid as anticipated (Filing No. 83 at 26–27). FIF responds that a portion of the '356 Patent is anticipated, and the remainder is unpatentable because its design is dictated by its function (Filing No. 86 at 22–24). On reply, Gema argues that FIF has failed to raise a genuine dispute of fact as to anticipation, and that FIF waived its functionality argument by failing to raise it in its Preliminary Invalidity Contentions. The Court will address the issues of anticipation and functionality in turn.

### i. Anticipation

In its Preliminary Invalidity Contentions, FIF asserts that the '356 Patent is anticipated by Mauchle and Mather (Filing No. 52 at 6). Gema uses a side-by-side comparison of the '356 Patent and Mauchle and Mather to show the many differences between them—namely, that Mauchle and Mather only depict the tip of a nozzle protruding from a threaded sleeve, and the claimed nozzle design and threaded sleeves are plainly different shapes (Filing No. 83 at 26–27).

In response, FIF argues that "the tip of the nozzle disclosed in the '356 Patent is identical to the design shown in Mauchle, rendering that portion of the design unprotectible as anticipated by Mauchle." (Filing No. 86 at 22). FIF's position that a portion of a claimed design can be anticipated is not only unsupported by caselaw, but also runs contrary to it. "The test for invalidity due to anticipation . . . requires the jury to consider the perspective of the ordinary consumer . . . . [and] the ordinary observer test requires consideration of the design as a whole." *Int'l Seaway*

*Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240, 1243 (Fed. Cir. 2009); *see In re Rubinfield*, 270 F.2d 391, 395 (C.C.P.A. 1959) ("It has been consistently held for many years that it is the appearance of a design as a whole which is controlling in determining questions of patentability and infringement."). The Court may not hold that a portion of the '356 is invalid as anticipated, and FIF has failed to show that the overall design of the '356 Patent is anticipated.

### ii. __Functionality__

FIF next argues that "the remainder of the nozzle design covered by the of the [*sic*] '356 Patent" has no ornamental features and is purely functional (Filing No. 86 at 22). As explained above, portions of a claimed cannot be held invalid. Although courts consider the purposes of particular elements of a design when determining functionality, the ultimate inquiry is the overall appearance of the design. *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) ("If the overall appearance of a claimed design is not primarily functional, the design claim is not invalid."); *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1323 (Fed. Cir. 2016) ("[D]esign patents protect the overall ornamentation of a design, not an aggregation of separable elements.").

Gema also argues that the Court should not consider FIF's functionality theory of invalidity because FIF failed to raise it in its Preliminary Invalidity Contentions. The Court agrees. FIF was ordered to serve its invalidity contentions by May 26, 2023 (Filing No. 28 at 3) and a statement of claims or defenses by March 6, 2024 (Filing No. 68). Neither filing mentions functionality (Filing No. 52; Filing No. 73). FIF does not explain why it failed to raise this theory or seek leave to amend its filings, and FIF has therefore waived it. *See Teashot LLC v. Green Mountain Coffee Roaster, Inc.*, 595 F. App'x 983, 978–88 (Fed. Cir. 2015) (affirming exclusion of doctrine of equivalents theory not raised in plaintiff's infringement contentions and affirming summary judgment of non-infringement); *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 809 F. Supp. 2d 863,

878 (N.D. Ill. 2011) (finding waiver of specific invalidity argument not raised in invalidity contentions); *Thermolife Int'l, LLC v. Myogenix Corp.*, No. 13cv651, 2015 WL 11237635, at *16 (S.D. Cal. Dec. 8, 2015) (finding waiter of theory of obviousness based on combination of two prior art references because defendants failed to disclose one reference in contentions); *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07CV1200, 2008 WL 2899822, at *5 (S.D. Cal. July 25, 2008) (finding waiver of claim construction argument not raised in contentions).

Even if the Court were to consider FIF's functionality theory, it would not preclude summary judgment. FIF must prove invalidity by clear and convincing evidence, and the Federal Circuit has "described as 'stringent' this standard as it applies to invalidating design patents on grounds of functionality." *Ethicon Endo-Surgery*, 796 F.3d at 1328. FIF argues that the claimed nozzle design "appears to have a large cylindrical cuff or flange, such as one to engage a portion of the gun when positioned therein, and the proximal portion of the nozzle presumably has a protruding element with notches that are used to secure the nozzle within a gun." (Filing No. 86 at 23). FIF cites no evidence regarding the functionality of the overall design and merely speculates ("appears to . . . such as . . . presumably") about the functions of certain elements. FIF suggests, at most, that the claimed nozzle design serves functions, but "[i]n determining whether a claimed design is primarily functional, '[t]he function of the article itself must not be confused with "functionality" of the design of the article.'" *Ethicon Endo-Surgery*, 796 F.3d at 1328 (second alteration in original) (quoting *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1462 (Fed. Cir. 1997)). A "claimed design [is] not invalid as functional simply because the 'primary features' of the design could perform functions." *Id.* Instead, FIF must show that the claimed design "is 'dictated by' the use or purpose of the article." *Id.* at 1328 (quoting *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993)).

The determination of "whether the overall appearance of a claimed design is dictated by functional considerations . . . should begin with an inquiry into the existence of alternative designs." *Id.* at 1330 (explaining that the design of a key blade, for instance, is dictated by function because no other shaped blade can unlock the corresponding lock); *see Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1368 (Fed. Cir. 1999) (explaining that a design is not "governed solely by function" if it "is not the only possible form of the article that could perform its function"); *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002) ("[I]f other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional."); *Hupp*, 122 F.3d at 1460 ("[I]t is relevant whether functional considerations demand only this particular design or whether other designs could be used, such that the choice of design is made for primarily aesthetic, non-functional purposes."). FIF does not argue that no alternative design could achieve the same functions as the claimed design. ([Filing No. 86 at 23](#)); *Universal Trim Supply Co. v. K & K Co. Grp. Ltd.*, No. 09-CV-18, 2010 WL 5094244, at *2 (D. Utah Dec. 8, 2010) (denying defendant's motion for partial summary judgment; finding that the patented product did not need to incorporate the claimed design "to achieve the equivalent functional advantage over a standard [product]"). FIF has therefore failed to show that the claimed design is dictated by function.

FIF also argues that the claimed design is not ornamental because "the majority of the nozzle" cannot be seen when used with a spray gun ([Filing No. 86 at 23](#)), but FIF offers no caselaw supporting this argument. The Federal Circuit has held that "articles which are concealed or obscured *in normal use* are not proper subjects for design patents, since their appearance cannot be a matter of concern." *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1380 (Fed. Cir. 2002) (cleaned up) (emphasis in original) (quotation marks and citation omitted). However,

the Federal Circuit construes "'normal use' in the design patent context to extent over 'a period in the articles life, beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article.'" *Id.* at 1380 (quoting *In re Webb*, 916 F.2d 1553, 1557–58 (Fed. Cir. 1990)); *see Int'l Seaway Trading*, 589 F.3d at 1241 ("[N]ormal use should not be limited to only one phase or portion of the normal use lifetime of an accused product."). The entire product practicing the '356 Patent is visible during its "normal use," including at the point of sale, so its design is eligible for design patent protection.

FIF lastly contents, again without support, that a nozzle practicing the '356 Patent "would be purchased solely because of its function relative to the spray gun it is used with, and not because of any ornamentality." (Filing No. 86 at 23). In determining whether a design is dictated by function, courts generally do not consider aesthetics or a consumer's motivation for purchasing an article. *See Seiko Epson*, 190 F.3d at 1368 ("[A]n absence of artistic merit does not mean that the design is purely functional"); *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 15-cv-111, 2023 WL 2726879, at *4 (S.D. Ind. Mar. 31, 2023) ("The requirement that a design patent be 'aesthetically pleasing' is not found in statute . . . . [and] is not supported by case law." (citations omitted)). FIF has failed to show that it can carry its stringent burden of showing functionality.

Because Gema has shown that FIF cannot establish invalidity of the '356 Patent by clear and convincing evidence, Gema's Motion is **granted** as to non-invalidity of the '356 Patent.

### c. The '740 Patent

Gema argues FIF cannot prove that the '740 Patent is invalid as anticipated (Filing No. 83 at 22–26). FIF responds that the '740 Patent is either anticipated or obvious (Filing No. 86 at 24).

#### i. Anticipation

In its Preliminary Invalidity Contentions, FIF asserts that the '740 Patent is anticipated by the '080 Patent and OPTIGUN Trademark Specimen (the "OPTIGUN Specimen") (Filing No. 85-

28). In its opening brief, Gema argues that the gun design claimed in the '740 Patent is "more elongated and streamlined" than the OPTIGUN Specimen, and the design in the '080 Patent was not only before the United States Patent and Trademark Office at the time of examination of the '740 Patent, but is also substantially different than the design in '740 Patent (Filing No. 83 at 28–29). FIF responds that the differences between the OPTIGUN Specimen and '740 Patent are slight, and an "ordinary observer would view the two guns as one and the same." (Filing No. 86 at 24).

The "ordinary observer" test is not the proper test for anticipation. To prove anticipation, FIF must show that "*each element and limitation of the claims*, was known or used by others before it was invented by the patentee." *Hoover Grp.*, 66 F.3d at 302 (emphasis added). FIF's perfunctory argument fails to establish that it can show anticipation by clear and convincing evidence. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (stating that where party fails to support position with legal analysis or citation, the argument is waived).

### ii. **Obviousness**

FIF alternatively argues that any differences between the designs of the OPTIGUN Specimen and '074 Patent "are slight and would certainly be obvious to a designer of ordinary skill who designs powder coating guns." (Filing No. 86 at 24). As explained earlier, FIF cannot establish obviousness by showing that a POSA merely knew of the elements of the claimed design. *See KSR*, 550 U.S. 418. FIF must also show that a POSA had a reason (besides hindsight) to combine the elements of the prior art references to create the same overall appearance as the claimed design. *LKQ*, 102 F.4th at 1299. FIF has again made no such showing. Gema has therefore shown that FIF cannot prove, by clear and convincing evidence, that the '740 Patent is invalid as obvious. Gema's motion is **granted** as to non-invalidity of the '740 Patent.

15

### d. **The '786 Patent**

The parties agree that FIF is not challenging the presumptive validity of the '786 Patent (Filing No. 86 at 24 n.3). As such. Gema's motion is **granted** as to non-invalidity of the '786 Patent.

### 2. **Infringement**

The Court now turns to the question of infringement. "Whether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparison it do the accused device." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997)). As to the first step, the Supreme Court and Federal Circuit have both stated that "a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (quoting *Dobson v. Dornan*, 1178 U.S. 10, 14 (1886)). The Federal Circuit has further "cautioned, and continues to caution, trial courts about excessive reliance on a detailed verbal description in a design infringement case. . . . Depictions of the claimed design in words can easily distract from the proper infringement analysis of the ornamental patterns and drawings." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). "As a rule, the illustration in the drawing is its own best description." *Id.* (alteration, quotation marks, and citation omitted). Courts are therefore not obligated to issue a detailed verbal description of a design if that description would not be "necessary or helpful." *Egyptian Goddess*, 543 F.3d at 679. The Court finds that a verbal construction is not necessary or helpful. Even though the claimed designs have both ornamental and functional elements, due to the similarity between the designs in this case, a detailed verbal description would only risk placing undue emphasis on certain minor features rather than the overall effect of the designs. "[T]he considerable effort in fashioning a detailed verbal description [would] not contribute enough to the infringement analysis to justify the endeavor." *Crocs*, 598 F.3d at 1302. The Court therefore relies on the patent drawings themselves.

The comparison step asks "whether the patented design as a whole is substantially similar in appearance to the accused design. The patented and accused designs do not have to be identical in order for design patent infringement to be found." *OddzOn Prods.*, 122 F.3d at 1405. The Federal Circuit has clarified that the operative question "is whether an ordinary observer, familiar with the prior art . . . would be deceived into believing [that the accused design] is the same as the patented [design]." *Egyptian Goddess*, 543 F.3d at 681. In some cases, where the claimed design and the accused design are plainly dissimilar, a comparison to the prior art may not be necessary. But in closer cases, like this one, comparisons to the prior art help "to focus on those aspects of a design which render the design different from prior art designs" and to determine whether an ordinary observer, familiar with those prior art designs, would be deceived. *Id.* at 677; *see Hangzhou Chic Intelligent Tech. Co. v. Gyoor*, 711 F. Supp. 3d 966, 970 (N.D. Ill. Jan. 12, 2024) (describing prior art as "contextual 'background' or a 'frame of reference'" in design patent infringement disputes).

### a. The '080 and '015 Patents

"The proper comparison requires a side-by-side view of the drawings of the . . . patent design and the accused products." *Crocs*, 598 F.3d at 1304. The depiction below shows the '080 Patent (left), '015 Patent (center), and the Accused Product (right) (Part No. 1008070A).



(Filing No. 1-1 at 3; Filing No. 51-2 at 3; Filing No. 51-2 at 3).

The next depiction compares the rear view of the '015 Patent and the Accused Product.



([Filing No. 1-2 at 9](#); [Filing No. 51-2 at 6](#)).

FIF identifies two differences between claimed designs and Accused Products. First, the claimed designs show a short taper, which is white in the '015 Patent, at the end of the nozzle, not found in the Accused Product ([Filing No. 85-3 at 5](#)–6). Second, the back of the Accused Product does not have the "small image of a Swiss flag" at the bottom of its handle like the '015 Patent does. *Id.* at 7. These distinctions are too few and trivial to create a substantial difference between the claimed designs and Accused Product. *See Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990–91 (Fed. Cir. 1993) (finding district court erred by focusing on "a single difference as opposed to the entirety of the patented design"). "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Id.* at 991; *see Crocs*, 598 F.3d at 1303–04 ("[T]he concentration on small differences in isolation distract[s] from the overall impression of the claimed ornamental features.").

FIF may have shown that the designs are not exact copies, but Gema need not show exact duplication to show infringement. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 856 (1950) ("One who seeks to pirate an invention . . . may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement."). Gema need only show that the designs are substantially similar. One

of the overall effects of the '080 and '015 Patents and Accused Product is a gun-type object with a recessed trigger, a sleek, elongated barrel with an upward-curved back, and a sunken, narrowed tip. The overall effects of the '015 Product and Accused Patent also share a primarily yellow and black color scheme and a primarily black barrel. A three-way comparison between the prior art, Accused Product, and claimed designs further shows that the "more elongated, streamlined and contoured" appearance of the claimed designs, which distinguishes them from the prior art, is also found in the design of the Accused Product. (Filing No. 83 at 23–24).

Gema has shown that the Accused Product embodies the overall effect of the '080 and '015 Patents in sufficient detail and clarity to cause market confusion. Gema's motion is therefore **granted** as to infringement of the '080 and '015 Patents by Part No. 1008070A.

### b. The '356 Patent

The below depiction compares the '356 Patent and a "representative example" of the pertinent Accused Products (Part Nos. Part Nos. 1010160A, 1010160, 1007931A, 1010754A, 1008140A, 1007935A, 1010090A, 1007683A, 1010752A, 1008145A, and 1008151A).



(Filing No. 1-3 at 4; Filing No. 51-4 at 3).

FIF again points out two minor differences between otherwise indistinguishable products. The "proximal end" (left side) of the patented nozzle has two indentations, whereas the Accused Products do not (Filing No. 85-3 at 8). And the "distal tip" (right side) of the patented nozzle has a "central element" within its notch, which the Accused Products do not have. FIF again gives improper weight to slight differences. Both designs have the overall effect of a nozzle with a

proximal end of about one-third the length of the nozzle, connected to a wider flange, which is connected to a "distal tip" that starts as a cylinder and gently tapers to a semi-pointed tip with notches. References to the prior art reinforce the conclusion that the claimed design and Accused Products share the claimed design's unique flange shape and gentle tapering (Filing No. 83 at 26–27). Gema has shown that the '356 Patent and Accused Products embody the same overall effect such that an ordinary observer would be deceived.

However, there are genuine disputes as to which Accused Products are infringing. Gema alleges that eleven Accused Products infringe the '356 Patent based on a document produced by FIF (the "Item Summary") (Filing No. 83 at 9 (citing Filing No. 82-2)).[3] But FIF offers a declaration from Mr. McClung that Part No. 1010160 is a genuine Gema product, and that FIF has never sold products with Part Nos. 100814A or 1008145A (Filing No. 85-2 ¶¶ 15–16). Part Nos. 1010160 and 100814A do not appear on the Item Summary. Part No. 1008145A is on the Item Summary, but the Item Summary alone, which is redacted and unauthenticated, does not prove beyond genuine dispute that FIF offered to sell a Part No. 1008145A. A reasonable jury could choose to credit Mr. McClung's testimony, so his declaration is sufficient to raise a genuine dispute as to infringement of the '356 Patent by Part Nos. 1010160, 100814A, and 1008145A. However, FIF does not dispute that it offered to sell the other eight Accused Products (Filing No. 86 at 9).

There are no genuine disputes of material fact as to infringement of the '356 Patent by the Part Nos. 1010160A, 1007931A, 1010754A, 1007935A, 1010090A, 1007683A, 1010752A, and 1008151A; and Gema's summary motion is **granted**. There are genuine disputes of material fact and summary judgment is **denied** as to infringement by Part Nos. 1010160, 1008140A, and 1008145A.

---

[3] Gema also cites its Preliminary Infringement Contentions (Filing No. 51-1), but those contentions are not evidence.

### c.  The '786 Patent

The next depictions show two views of the '786 Patent and a "representative example" of the pertinent Accused Products (Part Nos. 1006530A, 1007780, and 1007780A).



([Filing No. 1-4 at 3](#); [Filing No. 51-5 at 3](#); [Filing No. 1-4 at 4](#); [Filing No. 51-5 at 6](#)).

FIF notes that the top of the '786 Patent design has "one relatively longer concentric ring surrounded by two relatively shorter concentric rings," whereas the Accused Products have "a plurality of short concentric rings." ([Filing No. 85-3 at 10](#)). FIF also asserts that the '786 Patent "requires a central geometric element" near the middle of its underside not found on the Accused Products. *Id.* at 11. Once again, FIF improperly emphasizes two very minor features and ignores the striking similarity in the overall effects of the designs of the '786 Patent and Accused Products. Both designs give the overall effect of an elongated, downward facing isosceles triangle with one cylinder protruding up from the top, two shorter cylinders protruding out from one side, and one much longer cylinder with three indentations protruding downward and outward from the other side. The designs both embody the same overall effect so as to create market confusion.

However, there are genuine disputes as to which Accused Products infringe the '786 Patent. Gema alleges that three Accused Products infringe the '786 Patent, again based on the Item Summary ([Filing No. 82-2](#)). In his declaration, Mr. McClung states that Part No. 1007780 is a genuine Gema item ([Filing No. 85-2](#) ¶ 15). Part Nos. 1007780 does not appear on the Item

Summary. A reasonable jury could credit Mr. McClung's testimony, so it raises a genuine dispute as to infringement by Part No. 1007780. FIF does not dispute that it offered to sell Part Nos. 1006530A and 1007780A ([Filing No. 86 at 9](#)). Gema's motion is therefore **granted** as to infringement of the '786 Patent by Part Nos. 1006530A and 1007780A and **denied** as to infringement by Part No. 1007780.

### d. The '740 Patent

The below depiction compares the '740 Patent with an image representing the two pertinent Accused Products (Part Nos. 1010198A and 1008726A).



([Filing No. 46 at 34](#); [Filing No. 51-6 at 3](#)).[4]

FIF cites two alleged differences between these images: a black "lower protruding element" on the left side of the body of the spray gun; and a slightly longer nozzle length compared to the overall length of the gun ([Filing No. 85-3 at 12](#)). These minor details are not enough to convince a reasonable jury that an ordinary observer familiar with the prior art would not be deceived. Both designs have the overall effect of a sleek, elongated, and largely symmetrical product with a thicker center, a very slightly narrower barrel, and a small cylindrical tip on the end. Reference to the prior art also shows that the symmetrical shape of the '740 Patent design, which distinguishes it from the prior art, is shared with the Accused Products ([Filing No. 83 at 28](#)). The '740 Patent and

---

[4] The Accused Product image appears to be from a Gema product manual ([Filing No. 90-8 at 39](#)). However, FIF does not dispute that this image appropriately represents the relevant Accused Products.

Accused Products embody the same overall effect such that an ordinary observer would be deceived into thinking that the Accused Products are the same as the claimed design.

However, there are genuine disputes as to which Accused Products infringe the '740 Patent. Gema alleges that Part Nos. 1010198A and 1008726A infringe the '740 Patent, again based on the FIF Item Summary (Filing No. 82-2). Mr. McClung's declaration states that FIF never sold products with a Part No. 1008726A (Filing No. 85-2 ¶ 16). Part No. 1008726A does not appear on the Item Summary. A reasonable jury could credit Mr. McClung's testimony, so it raises a genuine dispute as to infringement by Part No. 1008726A. FIF does not dispute that it offered to sell Part No. 1010198A (Filing No. 86 at 9). Gema's motion is therefore **granted** as to infringement of the '740 Patent by Part No. 1010198A and **denied** as to infringement by Part No. 1008726A.

### 3. Marking Statute

FIF argues that Gema is precluded from recovering pre-suit damages for patent infringement under 35 U.S.C. § 287. Section 287 (the "marking statute") provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented, *either* by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, *or when, from the character of the article, this can not be done*, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. *In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.* Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a) (emphases added).

The United States Supreme Court has explained that the "clear meaning" of this statute is that a plaintiff "cannot recover damages against infringers of the patent, unless he has given notice

of his right, either to the whole public, by marking his article 'Patented,' or to the particular defendants, by informing them of his patent, and of their infringement of it." *Dunlap v. Schofield*, 152 U.S. 244, 247–48 (1894); *see Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) (stating licensees must also comply with Section 287). "The marking statute serves three related purposes: 1) helping to avoid innocent infringement; 2) encouraging patentees to give notice to the public that the article is patented; and 3) aiding the public to identify whether an article is patented." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (citations omitted). "The Marking Statute exists for the sole benefit of the public and protects against innocent infringement." *CFL Techs. LLC v. Gen. Elec. Co.*, No. CV 18-1444, 2021 WL 1105335, at *8 (D. Del. Mar. 23, 2021); *see Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993) ("The purpose of the constructive notice provision is to give patentees the proper incentive to mark their products and thus place the world on notice of the existence of the patent." (quotation marks and citation omitted)). Marking under Section 287 is entirely optional, and marking or providing notice to infringers "is an affirmative act . . . to be done by [the patentee]." *Coupe v. Royer*, 155 U.S. 565, 584 (1895).

Whether a plaintiff has satisfied the marking statute is a question of fact. *See Denneroll Holdings Pty Ltd. v. Chirodesign Grp., LLC*, No. 15-CV-740, 2016 WL 705207, at *9 (S.D. Tex. Feb. 23, 2016) (citing *Global Traffic Techs., LLC v. Morgan*, 620 F. App'x 895, 905 (Fed. Cir. 2015)). A defendant "bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287. To be clear, this is a low bar." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). The plaintiff then bears the burden to prove its compliance with the marking statute. *Maxwell*, 86 F.3d at 1111.; *see also Dunlap*, 152 U.S. at 248. "Therefore, at the summary judgment stage, the question before the

Court is whether [the plaintiff has] produced sufficient evidence from which a reasonable trier of fact could find that the patent markings on the packaging satisfied § 287's public notice requirement." *Denneroll*, 2016 WL 705207, at *9 (quotation marks and citation omitted).

Gema does not dispute that it did not give FIF actual notice before filing this litigation (Filing No. 85-2 ¶ 13), so the Court will focus on whether Gema gave constructive notice. Gema admits that it does not mark any of its products with patent information (Filing No. 90-5 ¶ 6). But Gema argues that alternative marking was permitted, and that its alternative marking is sufficient under Section 287. The Court will first address whether Gema has shown that alternative marking is permitted and then whether Gema's alternative marking satisfies the marking statute.

### a.   <u>Whether Alternative Marking Is Permitted</u>

Gema asserts that it does not mark its products for "a variety of reasons," including:

> (1) applicable patents are often not granted until well after the start of product production; (2) Gema's products are sold throughout the world and the applicable patents are granted at different times . . . , so changes to product labeling and manufacturing are either not possible or would result in differently-labeled products in different markets across the globe; (3) the products are too small to allow sufficient space for labeling (for example, nozzles), particularly because multiple patents in several jurisdictions are often applicable to a single product; and (4) some materials could not be marked in a commercially viable manner until more recently.

(Filing No. 90-5 ¶ 6). Based on this vague and non-exhaustive list, no reasonable jury could conclude that Gema was exempt from Section 287's physical marking requirement.

Gema's first and fourth reasons do not justify alternative marking because they do not explain why, "from the character of the article," physical marking "can not be done." 35 U.S.C. § 287(a); *Global Traffic*, 620 F. App'x at 905 ("As noted, the marking statute requires an analysis of the 'character of the article.'"). These reasons instead relate to the financial and manufacturing complications that marking may cause. Courts give patentees great leeway in determining whether the character of the article makes marking infeasible or impossible, *Sessions v. Romadka*, 145 U.S.

29, 50 (1892), but patentees are not excused from compliance with the marking statute whenever marking would require expensive changes to their production process. The marking statute is not mandatory, *Coupe*, 155 U.S. at 584, and patentees are free to weigh the costs of marking against the value of infringement damages and choose whichever makes the most economic sense. The Court notes, however, that a "simple and inexpensive statutory alternative to marking," a letter, is "always available" to a plaintiff. *Wayne-Gossard Corp. v. Sondra, Inc.*, 434 F. Supp. 1340, 1364 (E.D. Pa. 1977), *aff'd on other grounds*, 579 F.2d 41 (3d Cir. 1978).

Gema's second reason and part of its third reason are also unpersuasive because the United States' patent enforcement laws, including § 287, relate only to United States patents, so whether Gema can also print foreign patent information on their products is irrelevant to the Court's analysis. Gema has only two United States patents for the products practicing the '080 and '015 Patents, and only one United States patent for the products practicing each of the '356, '786, and '740 Patents (Filing No. 90-5 at 28, 34). Gema fails to explain why it could not print these one or two patent numbers on the respective practicing products.

Gema's third reason relates to the character of the products: "the products are too small to allow sufficient space for labeling (for example, nozzles)." (Filing No. 90-5 ¶ 6). In its reply, FIF argues that because Gema was able to fit other writing on the practicing products, it has no excuse for not printing the patent information. FIF correctly notes that several courts have found that "[w]here the patented article has markings or printing on it, other than the appropriate patent marking, then the alternate form of patent markings on the package is not sufficient compliance with the statute." *Rutherford v. Trim-Tex, Inc.*, 803 F. Supp. 158, 163 (N.D. Ill. 1992) (citing cases). The existence of non-patent writing on the practicing products cuts strongly against Gema's claim that physical marking under Section 287 was not feasible. The products practicing the '080, '015,

and '740 Patents, in particular, are quite large and contain a substantial amount of writing on only a small portion of the products (Filing No. 97-1; Filing No. 97-2).

But regardless of whether the non-patent writing, by itself, precludes the use of alternative marking, Gema has failed to create a genuine dispute as to whether physical marking was not possible or feasible. Gema's generalized assertion that its "products are too small to allow sufficient space for labeling (for example, nozzles)" is not enough (Filing No. 90-5 ¶ 6). This assertion makes sweeping claims about Gema's products and does not offer any specific information about Gema's ability to print "patent" or "pat." and patent numbers on the products practicing those patents. This type of vague assertion is insufficient to preclude summary judgment *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016) ("[A]mbiguity and generality cannot create a genuine issue of material fact."); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("The parties are required to put their evidentiary cards on the table . . . . Summary judgment is not a time to be coy; conclusory statements not grounded in specific facts are not enough." (cleaned up) (quotation marks and citation omitted)); *see, e.g.*, *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024) ("Summary judgment is the 'put up or shut up' time in litigation.").

Gema cntends argues that "powder coating products (such as powder coating guns) are subject to heavy use and physical handling and, as a result, often become 'unrecognizable' as they get 'beat up' over time," making them "poor candidates for physical labeling." (Filing No. 92 at 29). Gema offers no authority or analysis to support its implied argument that products subject to heavy use are exempt from physical marking. This conclusory argument is therefore waived. *See M.G. Skinner & Assocs.*, 845 F.3d at 321; *Boomer*, 309 F.3d at 422 n.10; *accord Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-cv-47338, 2020 WL 5106845, at *7 (N.D. Cal. Aug. 31, 2020) ("[Plaintiff] points to no evidence suggesting that marking the [GoPro] camera itself was not

possible, arguing instead that because the cameras were designed to be rugged, I should infer that 'it would have been impossible or impractical to mark the camera itself in a meaningful and lasting way.'"; granting summary judgment in favor of defendant as to marking).

Gema's fourth reason ("some materials could not be marked in a commercially viable manner until more recently") likewise is too vague to withstand summary judgment (Filing No. 90-5 ¶ 6). It refers generally to "materials" and not any specific product; it does not explain when marking became "commercially viable" or why Gema did not start marking them "more recently"; and it does not explain what Gema believes "commercial viability" is or cite any decision holding that physical marking "can not be done," 35 U.S.C. § 287, if it is not "commercially viable."

FIF has met the "low bar" of identifying Gema's unmarked patented articles, *Arctic Cat Inc.*, 876 F.3d at 1368, and in Gema has failed to raise a genuine dispute as to whether it has satisfied the marking statute without physically marking its products. FIF is therefore entitled to summary judgment as to marking. But for the reasons explained below, even if alternative marking were permitted, FIF would still be entitled to summary judgment.

###### b.  <u>Whether Gema's Alternative Marking Was Sufficient</u>

Gema argues that it adequately marked its products by listing patent information on Gema's public website and distributing product manuals referring readers to that website (Filing No. 92 at 27–28). Gema's alternative marking does not satisfy Section 287 for several reasons.

First, Gema has not shown that it has product manuals for all of the practicing products. Gema designates manuals for the products practicing the '080, '015, and '740 Patents, but not the '356 or '786 Patents (Filing No. 90-7; Filing No. 90-8; Filing No. 90-9). Although these manuals show the '356 and/or '786 Patent practicing products, they are not manuals for, or distributed with, those products (*see* Filing No. 90-9 at 37). Additionally, Gema fails to offer any evidence that the product manuals were distributed on or in the product packaging, or even *with* the products. The

marking statute requires alternative marking on a label or packaging containing the product because "when the public finds no marking or writing whatsoever on the article, then the package would be the next most logical place for effective notice to the public of the existence of the patent." *Rutherford*, 803 F. Supp. at 164. Several federal courts have held that distribution of literature "separately from the . . . devices themselves . . . is insufficient under the statute, as a matter of law." *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 830 (E.D.N.Y. July 11, 1995); *see Acantha LLC v. Depuy Orthopaedics Inc.*, No. 15-C-1257, 2018 WL 1951231, at *4 (E.D. Wis. Apr. 25, 2018), *vacated in other part*, No. 15-C-1257, 2019 WL 6710913, at *1 (E.D. Wis. Oct. 8, 2019) ("Because [plaintiff] has not established that the . . . guides were distributed or shipped with the licensed products, it cannot rely on the fact that these guides contain its patent number to show that it complied with the requirements of § 287(a)."); *Calmar, Inc. v. Emson Rsch., Inc.*, 850 F. Supp. 861, 868 (C.D. Cal. 1994) (finding patentee did not comply with Section 287 by listing patent information on a "fact sheet" provided to customers and prospective customers with product samples, which was "on occasion" contained in shipping cartons with product). Absent any evidence that the product manuals accompanied the practicing products, the Court cannot conclude that the manuals satisfy the marking statute.

Further, although Gema's product manuals list Gema's website and contain the word "patent," the manuals themselves contain no indication that the products are patented. *Crystal Lagoons U.S. Corp. v. Desert Color Manager*, slip op. at 9, No. 20-cv-851, 2025 WL 606055, at *14 (D. Utah Feb. 25, 2025) ("Section 287(a) . . . requires that the internet address *and* the word 'patent' or the abbreviation 'pat.' be affixed to the physical, patented article."). The manuals merely refer readers to the Gema patent website "[f]or information regarding patents" or "[f]or patent information." (Filing No. 90-5 at 9; Filing No. 90-6 at 3; Filing No. 90-7 at 3; Filing No. 90-8 at

3; Filing No. 90-9 at 3). These general references cannot be said to notify the public that the subjects of the manuals are patented, as intended by the marking statute.

The limited distribution of the manuals poses yet another problem for Gema. Gema provides manuals to "all new customers and all existing customers who purchase new systems," but no one else (Filing No. 90-5 at 62). The marking statute, however, requires notice to "the whole public," not just to certain paying customers. *Dunlap*, 152 U.S. at 247–48; *see Am. Med. Sys.*, 6 F.3d at 1538. Moreover, although Gema offers evidence that its website has listed its patent information since 2016, and its manuals have referred to the website since 2016, Gema does not prove when it began providing product manuals to customers. (Filing No. 90-5 ¶¶ 3–6).

Gema cites several cases in support of its argument that genuine disputes of material fact preclude summary judgment as to marking (Filing No. 92 at 34). In some of those cases, the courts afforded the patentee "great discretion" in deciding whether to alternatively mark its products when "the alternative marking is found to satisfy the statutory notice provision." *Rutherford*, 803 F. Supp. at 162; *see Stryker Corp. v. Zimmer, Inc.*, No. 10-CV-1223, 2012 WL 6821683 (W.D. Mich. Nov. 29, 2012) (prioritizing "the marking statute's notice-serving purpose over the precise mechanics of compliance"). This lenient interpretation of the marking statute is not without criticism. *See Zadro Prods., Inc. v. Feit Elec. Co., Inc.*, 514 F. Supp. 3d 1209, 1216 (C.D. Cal. 2021) ("[T]he analysis cannot merely be that marking the packaging likely gives any purchaser notice and so satisfies the requirements of § 287(a). Such an analysis fails to explain why § 287(a) prefers that marks be made on the product instead of the packaging, particularly where that is feasible."). But even applying a more discretionary, practical interpretation of the marking statute, the Court cannot find that Gema has satisfied it. A mere reference to "patent information" found on Gema's website, printed in manuals for only certain products, given to only certain customers, and not distributed

with the products, clearly does not satisfy the letter or spirit of the marking statute. *See Metrologic Instruments, Inc. v. PSC, Inc.*, No. 99-4876, 2004 WL 2851955, at *20 (D.N.J. Dec. 13, 2004) (applying discretionary interpretation of Section 287 but finding noncompliance where patent numbers were listed only in user manuals; "All that was to be found on th[e] packages were labels stating 'See User's Guide for Patent Coverage.' . . . [M]arking the user's guide is yet another step removed from the product. And it is, in addition, a step beyond that which the explicit language of the marking statute contemplates."); *Contour IP Holding*, 2020 WL 5106845, at *7 (finding that plaintiff could not show compliance with marking statute by citing a "user manual point[ing] the public to a website with patent information" because plaintiff failed to show that products could not be marked or that manuals were actually distributed with the products); *Meridian Mfg., Inc. v. C & B Mfg., Inc.*, 340 F. Supp. 3d 808, 843 (N.D. Iowa 2018) (finding plaintiff did not show that the character of the product prevented physical marking or that the user manuals that plaintiff alleges it marked actually contained patent numbers).

Additionally, in the cases cited by Gema, the plaintiffs offered ample evidence to raise genuine disputes regarding the sufficiency of their physical and/or alternative markings. *See EIS, Inc. v. IntiHealth Get GmbH*, No. 19-1227, 2023 WL 6799332, at *3 (D. Del. Aug. 23, 2023); *Denneroll*, 2016 WL 705207, at *9 (finding that based on "'character of the article' considerations," a reasonable jury could conclude that the plaintiff's decision to mark the packaging served the purpose of providing constructive notice to the public); *AVID Identification Sys., Inc. v. Philips Elecs. N. Am. Corp.*, No. 04-CV-183, 2006 WL 1408318, at *2 (E.D. Tex. May 18, 2006) (denying summary judgment in light of a variety of evidence of physical marking and several types of alternative marking). Gema's limited evidence is not enough to raise any genuine dispute.

The undisputed material facts thus show that Gema did not give FIF constructive or actual notice of its alleged infringement under 35 U.S.C. § 287 before filing suit. As such, the Court **grants** FIF summary judgment as to marking. Gema is precluded from recovering monetary damages for infringement of the '080, '015, '365, and '786 Patents that occurred before Gema filed its Complaint on October 20, 2022 (Filing No. 1), and for infringement of the '740 Patent that occurred before Gema first filed its First Amended Complaint on May 22, 2023 (Filing No. 40-1).

## B.   The Gema Trademarks

Gema moves for summary judgment as to its claims of trademark infringement under Sections 32[5] and 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1125. FIF cross-moves for summary judgment that the "nominative fair use defense" shields it from trademark infringement liability and that the doctrines of laches and/or acquiescence bar Gema from seeking monetary damages for its Lanham Act claims. The Court will first address the question of trademark infringement, including the application of the nominative fair use defense, and then discuss whether laches or acquiescence bars Gema's claim for monetary relief under the Lanham Act.

### 1.   Trademark Infringement

"To prevail on a Lanham Act claim, a plaintiff must establish that (1) [its] mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Only the second element is in dispute. Courts consider seven factors in the likelihood of confusion analysis: (1) similarity of the marks;

---

[5] As a preliminary matter, Gema has not established its standing to bring claims under Section 32, which permits "the registrant" to bring trademark infringement claims. 15 U.S.C. § 1114. "Registrant" has been defined to mean a mark's current owner, which is Gema Switzerland GmbH. (Filing No. 83 at 9); *see Specht v. Google Inc.*, 747 F.3d 929, (7th Cir. 2014) ("[O]nly the current owner of the mark can claim infringement."); *Fed Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 75 (2d Cir. 2013) (stating that an assignment under the Lanham Act requires the transfer of ownership of marks at issue). Regardless, the Court will proceed with its infringement analysis because Gema appears to have standing under Section 43, and the analyses for Sections 32 and 43 are the same. *Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016).

(2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) the defendant's intent to "palm off" his products as another's. *Id.* "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented . . . ." *Id.* Likelihood of confusion is a question of fact and may only be resolved on summary judgment when the evidence is "so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996) (affirming summary judgment where there was "no reasonable likelihood that any significant number of consumers could mistake the defendant for the plaintiff").

### a.  Nominative Fair Use Defense

FIF argues that it is "protected from liability from Gema's various Lanham Act claims by the nominative fair use defense." (Filing No. 86 at 30). The "nominative fair use defense" was first announced by the Ninth Circuit Court of Appeals in *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992). The Ninth Circuit has explained the distinction between "'classic fair use,' in which 'the defendant has used the plaintiff's mark to describe the defendant's *own* product,' and 'nominative fair use,' in which the defendant has used the plaintiff's mark 'to describe the *plaintiff's* product' for the purposes of, for example, comparison to the defendant's product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002) (emphasis in original) (quoting *New Kids*, 971 F.2d at 308). In the Ninth Circuit, "classic fair use" and "nominative fair use" are governed by different analyses; classic fair use applies the familiar "likelihood of consumer confusion" test, and nominative fair use applies a distinct three-element test. *Id.* at 1150–51. Gema responds that the nominative fair use defense does not apply because FIF uses the Gema Trademarks to describe its own products, not Gema's products, and because FIF fails to establish the three elements of the nominative fair use defense.

The Seventh Circuit has not adopted the nominative fair use defense, and neither party argues why this Court should or should not adopt it, though FIF cites three cases in which district courts in the Seventh Circuit have discussed the defense. (Filing No. 86 at 29). In *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831 (N.D. Ill. 2002), the Northern District of Illinois applied a "classic" fair use defense and cited *New Kids* only for the general proposition that descriptive language falls outside trademark protections because "'no one should be able to appropriate descriptive language through trademark registration.'" *Id.* at 843 (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir. 1992)); *accord Swarovski Aktiengesellscahft v. Building No. 19, Inc.*, 704 F.3d 44, 49–50 (1st Cir. 2013) ("[W]e have recognized the 'underlying principle' of nominative fair use, but like several other courts, we have never endorsed any particular version of the doctrine.").

In *Data Management Association International v. Enterprise Warehousing Solutions, Inc.*, No. 20 C 4711, 2020 WL 7698368 (N.D. Ill. Dec. 28, 2020), the Northern District of Illinois again declined to adopt any circuit's nominative fair use defense, but it nevertheless considered the three elements of the Ninth Circuit's nominal fair use defense because "[l]ikelihood of confusion is a fact-intensive inquiry," and in cases of "nominative" use, many of the traditional factors are inapplicable. The *Data Management* court explained its reasoning in detail:

> The Seventh Circuit has not addressed the nominative fair use defense; as a result, there is no binding precedent guiding this Court's application of the nominative fair use factors in relation to the traditional likelihood of confusion test. *And on that issue, circuits have not only split, but splintered*. The Third Circuit treats nominative fair use as an affirmative defense, and directs courts to consider the three factors only after the plaintiff has made a showing of likelihood of confusion under a modified version of the traditional analysis. The Second Circuit has similarly concluded that the nominative fair use factors should supplement, rather than supplant, the traditional factors. But the Ninth Circuit and other courts have observed that the traditional factors should not be used at all in nominative fair use cases, because "often many of the factors 'are either unworkable or not suited or helpful as indicators of confusion in this context.'" . . . *Because the unhelpfulness*

> *of the traditional likelihood of confusion factors in this case renders the nominative*
> *fair use factors dispositive, the Court need not endorse one circuit's approach*.

*Id.* at *2 n.1 (emphases added) (citations omitted).

The Northern District of Indiana applied similar reasoning in *Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp. 2d 1015 (N.D. Ind. 2012). That court explained that "although the Ninth Circuit's approach has not been universally adopted, several courts have recognized that, in the context of a referential or nominative type of use, the application of the traditional multi-factor test is difficult because often many of the factors are either unworkable or not suited or helpful as indicators of confusion in this context." *Id.* at 1030 (cleaned up) (quotation marks and citations omitted). The *Dwyer* court specifically cited the Fourth Circuit's decision in *Rosetta Stone*, which explained why certain factors, like "the similarity of the marks and the strength of the plaintiff's mark are of limited value in such cases":

> Consideration of the similarity of the marks will *always* suggest the presence of
> consumer confusion—the mark used will always be *identical* "because, by
> definition, nominative use involves the use of *another's* trademark in order to
> describe the trademark owner's *own* product." The similarity factor does not
> account for context and "leads to the incorrect conclusion that virtually all
> nominative uses are confusing."

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012) (emphases in original) (internal citation omitted) (quoting *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 224 (3d Cir. 2005)). The *Dwyer* court ultimately decided to apply the standard seven-factor likelihood of consumer confusion test, "modified for nominative fair use in the context of comparative advertising." *Dwyer*, 873 F. Supp. 2d at 1031.

The Court is persuaded by the *Dwyer* court's reasoning and declines to endorse or adopt a nominative fair use defense. The Seventh Circuit has not adopted this defense and has not indicated any likelihood that it will. As the *Dwyer* court noted, "[t]he Seventh Circuit has not ruled on the applicability of the nominative fair use defense, and has not referenced it even in the context of a

defendant's use of a mark to describe the plaintiff's product." *Id.* (citing *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995). Instead, in *August Storck*, the Seventh Circuit "considered the defendant's use of the plaintiff's mark to be comparative advertising, and noted that it was beneficial to consumers because they could 'learn at a glance what kind of product is for sale and how it differs from a known benchmark.'" *Id.* at 1030–31 (quoting *August Storck*, 59 F.3d at 618). The Seventh Circuit's decision in *August Storck* shows that its seven-factor test can more than adequately address cases of "nominal" or "referential" trademark use, and there is no need to adopt a separate nominative fair use defense. District courts are given broad discretion in determining how to weigh the seven factors to accommodate the fact-sensitive inquiry of likelihood of consumer confusion. In cases of alleged nominative use, factors like the similarity between marks and products or the strength of the plaintiff's marks may carry less weight, and factors like degree of care, actual confusion, and the defendant's intent may carry more. Because the Court declines to adopt the nominative fair use defense, FIF's motion as to nominative fair use is **denied**. The Court will therefore analyze Gema's trademark infringement claims using the Seventh Circuit's seven-factor balancing test, adjusting the weight of each factor to account for the specific facts of this case.

    b.  **Factors 1, 2, 3, and 5: Similarity of Marks, Similarity of Goods, Area and Manner of Concurrent Use, and Strength of Gema's Marks**

Gema offers ample evidence that the marks and products on FIF's website are identical or nearly identical to Gema's Trademarks and products, and that Gema and FIF are based in the same city and market to the same consumers nationwide (Filing No. 83 at 32–38). ███████████ ████████████████████████████████████████████████, and it cites the opinion of its Marketing Director that Gema is "widely recognized as a market leader in the powder coating industry," which carries only some probative weight (Filing No. 82-8 ¶ 6); *see E'Stephenie, Inc. v.*

*Greek House Int'l, LLC*, No. 04-cv-1235, 2006 WL 8446431, at *6 (S.D. Ind. June 13, 2006) (giving affidavit of trademark holder "minimal probative weight"). FIF does not dispute the similarity of the marks or products on its website or the strength of Gema's marks, so these factors weigh in Gema's favor.

### c.   Factor 4: Degree of Care

Gema contends that "[a] significant portion of both companies' sales revenue comes from inexpensive wearable and consumable replacement parts. Thus, many consumers would be unlikely to exercise significant care in their purchasing decisions." (Filing No. 83 at 37). Gema appears to concede that consumers would exercise great care in purchasing its other more expensive products. But even as to replacement products, Gema does not identify which products are "replacement products," or what Gema means by "inexpensive." Many of the smaller "aftermarket" products on FIF's website—which are presumably less expensive than the Gema-brand equivalents—cost between $15.00 and $50.00 (Filing No. 82-16 through Filing No. 82-24), but a "Resistor Replacement" is listed for $98.00 (Filing No. 82-19 at 3), some "Nozzle Assemblies" are listed for over $75.00 (Filing No. 82-17 at 2 –3), and several "Nozzle Extensions" are listed between $240.79 and $496.10 (*id.* at 5).

But even for objectively inexpensive products, the fact that powder coating equipment is not "widely accessible" may mean that consumers will exercise more care in selecting replacement parts for their powder coating systems than for, say, their home appliances. *See Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 426 (7th Cir. 2019) ("[I]f a product is widely accessible and inexpensive it follows that consumers will exercise little care in discriminating among product makers."). Given the huge variety in pricing of powder coating products, coupled with the lack of evidence about the accessibility of powder coating equipment parts and powder coating consumers, this factor is, at best, neutral.

**d.  Factor 6: Actual Confusion**

Gema argues that "FIF's widespread use of the Gema Trademarks causes consumer confusion" and cites several alleged incidents of actual confusion ([Filing No. 83 at 38](#)). First, Gema states that one of its customers, ███, "mistakenly purchased products from FIF believing that it was purchasing genuine Gema equipment." *Id.* In support, Gema cites an email from one Gema employee to another about a meeting at a ███ facility between two Gema employees and an employee of ███, one of Gema's authorized distributors. The email states, in relevant part:



([Filing No. 82-27](#)). This evidence is plainly inadmissible, as it is hearsay within hearsay within hearsay. And even if it were admissible, it does not show any confusion about the source of FIF's goods—it shows merely that a Gema customer ordered a Gema product from FIF.

Gema next asserts that in 2023, ███ "attempt[ed] to order genuine Gema products through FIF." ([Filing No. 83 at 38](#)). Gema cites an email from a ███ employee to both Gema and FIF placing an order for several parts using Gema part numbers. ([Filing No. 82-28](#)). The fact that ███ emailed both Gema and FIF for a quote does not necessarily show any confusion about the source of FIF's goods, since it is undisputed that FIF sells Gema products.

Lastly, Gema asserts that it has "received other reports of customers purchasing products from FIF that it believed to be genuine and were in fact knock-offs." ([Filing No. 83 at 38](#)). In support of this assertion, Gema cites another email and the declaration of its Marketing Director, Jeff Hale ("Mr. Hale"). The email is from ███, a Gema distributor, to Gema, stating:

(Filing No. 82-34 at 2). Mr. Hale's declaration states, in relevant part:

> I am aware of multiple instances of consumer confusion that have occurred in the marketplace based on FIF's use of Gema's trademarks. In each of these instances, customers (including those that have been customers of Gema and of Gema's authorized distributors) have expressed confusion about the source of FIF's products and/or FIF's relationship with Gema.

(Filing No. 82-8 ¶ 9).

This email and declaration both relay the out-of-court statements of unnamed third-party customers. They are textbook hearsay and is inadmissible. If Gema's consumers were actually confused about the origin of FIF's products, then the Court would expect to see declarations from those customers. *Brown*, 94 F.4th at 667 ("Summary judgment is the 'put up or shut up' time in litigation."). Gema has offered no admissible evidence of actual confusion, so this factor is neutral.

### e.  Factor 7: Defendant's Intent to Deceive or Confuse

The final factor, the defendant's intent, "looks primarily for evidence that the defendants are attempting to 'pass off' their products as having come from the plaintiff." *Packman*, 267 F.3d at 644 (quoting *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 940 (7th Cir. 1986)). Gema's evidence of FIF's intent is the fact that "FIF was established to profit off the goodwill and consumer recognition Gema has spent years cultivating." (Filing No. 83 at 39). Gema argues that the "only logical reason for FIF to imply this affiliation is to trade off of Gema's brand recognition and reputation for quality. This is supported by the fact that . . . it has continued to rely heavily on Gema's marks to promote its own products until very recently." *Id.* at 39.

FIF's strategy of likening its products to Gema's, in and of itself, does not show an intent to confuse consumers. To the contrary, it is precisely the type of conduct that the Seventh Circuit has stated falls outside the protections of the Lanham Act.

39

> A use of a rival's mark that does not engender confusion about origin or quality is . . . permissible. The use is not just permissible in the sense that one firm is entitled to do everything within legal bounds to undermine a rival; it is beneficial to consumers. They learn at a glance what kind of product is for sale and how it differs from a known benchmark. . . .
>
> Both the FTC and the FDA encourage product comparisons. The FTC believes that consumers gain from comparative advertising, and to make the comparison vivid the Commission "encourages the naming of, or reference to competitors." 16 C.F.R. § 14.15(b). A "comparison" to a mystery rival is just puffery; it is not falsifiable and therefore is not informative.

*August Storck*, 59 F.3d at 618.

Further, the designated evidence shows that FIF actively tried *not* to confuse consumers. Following an August 31, 2017 call with Gema's counsel, ███████████████████, regarding Gema's trademark concerns, Mr. McClung sent five emails about changes to his website and business cards that he hoped would resolve those concerns (Filing No. 85-15 at 3–4, 6 ("I am defining [*sic*] to be as transparent as I can to ensure the end user/customer is informed as best as possible on original versus aftermarket equipment. . . . I want to be 110% compatible and accurate with webpage data and not mislead any customer. . . . As we discussed on the phone, I want to ensure everything on my website and business cards is done in a professional and legally correct manner. I never have had intentions otherwise."). Even FIF's use of the ambiguous term "aftermarket" to describe its off-brand products does not evidence an intent to deceive in light of Mr. ████████ statement that Gema "would prefer that you state that you are selling *aftermarket*, non-original Gema parts." (Filing No. 85-15 at 5 (emphasis added)). Gema has produced no evidence of FIF's intent to "pass off" its products as its own, and the designated evidence shows that FIF had no such intent. This factor therefore weighs against Gema. *See Phocatox Techs., LLC v. Wiersig*, No. 18-cv-1298, 2021 WL 8153555, at *6 (S.D. Ind. Apr. 30, 2021) ("[T]here is uncontroverted testimony that the [defendants] worked with [its marketing team] to remove the . . . marks as they were discovered. This factor weighs heavily against [plaintiff].").

### f.  Weighing the Factors

After a thorough review of the evidence, the Court finds that there are genuine disputes as to whether FIF's use of the Gema Trademarks is likely to cause consumer confusion. Although Gema has presented uncontroverted evidence of the similarity of marks and products, area and manner of concurrent use, and the strength of its marks, those factors carry little weight in a case like this one, where FIF is intentionally using Gema's Trademarks referentially. The more relevant factors—degree of care, actual confusion, and intent to deceive—are either neutral or weigh against Gema. Gema has not presented evidence that "is so one-sided" that there can be no doubt as to how the likelihood of confusion question should be resolved. *Door Sys.*, 83 F.3d at 173. Gema's motion is **denied** as to trademark infringement.

### 2.  Laches

FIF cross-moves for summary judgment that laches bars Gema from recovering monetary damages for its Lanham Act claims.[6] Gema argues FIF has failed to show that laches is appropriate, and FIF cannot invoke the equitable doctrine of laches because of its willful trademark infringement and unclean hands. The Court will decide whether laches is applicable before discussing whether the doctrine is barred by willful infringement and/or unclean hands.

### a.  Application of Laches

"The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002). Laches applies to claims under the Lanham Act. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999); *see Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) ("It is well

---

[6] "The Lanham Act specifically contemplates that both injunctive relief and awards of damages for violation of 15 U.S.C. § 1125 shall be subject to the principles of equity, which include the doctrine of laches," so there is "nothing to preclude the application of laches to . . . requests for both equitable relief and damages." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999). However, FIF moves to apply laches only to Gema's claim for monetary relief, so the Court will not address whether laches also bars Gema's claim for injunctive relief.

established that laches is a valid defense to Lanham Act claims, including those for false advertising."). For laches to apply, FIF must show that: (1) Gema had actual or constructive knowledge of FIF's infringing use of the marks; (2) Gema inexcusably delayed in taking action with respect to FIF's use of the marks; and (3) FIF would be prejudiced by allowing Gema to assert its rights at this time. *Chattanoga Mgf.*, 301 F.3d at 792–93 (citations omitted). The "district court enjoys considerable discretion in determining whether to apply the doctrine of laches to claims pending before it." *Hot Wax*, 191 F.3d at 819. "Laches is generally a factual question not subject to summary judgment" but may be decided on summary judgment if "no genuine factual issues are in dispute." *Jeffries v. Chi. Transit Auth.*, 770 F.2d 676, 679 (7th Cir. 1985).

### i.  **Knowledge**

"Addressing the first part of the analysis, it is clear that a plaintiff must have actual or constructive notice of the defendant's activities." *Chattanoga Mfg.*, 301 F.3d at 792. "[A] trademark owner is 'chargeable with information it might have received had due inquiry been made.'" *Id.* (quoting *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103 (7th Cir. 1970)).

Gema argues that FIF "has not pointed to when its use of Gema's marks was sufficiently infringing to obligate Gema to take action" and "has set forth no facts establishing that FIF has been promoting its products in substantially the same way since 2017, let alone since it began operating." (Filing No. 92 at 39, 36). But Gema itself confirms that FIF has been using the Gema Trademarks in substantially the same way since 2016 (Filing No. 83 at 16–17, 33–34 ("FIF has used identical marks to the Gema Trademarks to sell its knock-off powder coating equipment since at least 2016 and continues to do so today. . . . In particular, FIF has used the GEMA mark in its advertising since the first version of its website existed. . . . FIF has consistently used the GEMA house mark in various facets of its online marketing on its website since 2016 in a manner likely to cause consumers to be confused as to the source of FIF's products.")).

Even assuming Gema did not have constructive notice of FIF's alleged misuse of the Gema Trademarks in 2016, the undisputed evidence shows that Gema had actual notice by 2017. In June 2017, Gema's Marketing Specialist ████████ emailed ██████, stating:



(Filing No. 85-22 (emphases added)).

Then, in September 2017, Mr. McClung and Mr. ██████, exchanged emails about FIF's past and continued use of Gema's marks (Filing No. 85-15 at 6). Tellingly, the subject of these emails was "**urgent** TRADEMARK AND COPYRIGHT INFRINGEMENT." *Id.* (bold emphasis added). Mr. ██████ October 25, 2017 email stated that FIF's "website (and most likely new business card) *still* implies association with Gema." *Id.* at 5 (emphasis added). Mr. ██████ stated:



*Id.* (emphases added).

This email exchange shows that Gema had actual notice of FIF's alleged misuse of the Gema Trademarks since 2017. Gema notes these emails were sent when FIF was still an "integrator," but FIF's "integrator" status was terminated in 2019 (Filing No. 92 at 36). This change is immaterial, since the termination of FIF's "integrator" status meant only that it could no longer

purchase new Gema manual units directly from Gema or at a discount (Filing No. 92 at 31; Filing No. 90-10). This change had no effect on how FIF marketed its services, its refurbished or used Gema products, or its non-Gema products. Based on the undisputed evidence, Gema had actual knowledge of FIF's allegedly infringing conduct by summer 2017 at the latest.

### ii. **Delay**

"Because the Lanham Act does not contain a statute of limitations, federal courts have referred to analogous state statutes of limitations to determine whether a presumption of laches should apply." *Hot Wax*, 191 F.3d at 820–21. Courts in the Seventh Circuit have most often found that Indiana's two-year statute of limitations for injury to personal property is most analogous to the Lanham Act. *See, e.g.*, *Annie Oakley Enters. Inc. v. Rise-N-Shine LLC*, No. 20-cv-638, 2021 WL 11963067, at *6 (S.D. Ind. Mar. 23, 2021); *Barrington Music Prods., Inc. v. Music & Arts Ctrs.*, No. 16-cv-6, 2017 WL 4683194, at *3 (N.D. Ind. Oct. 17, 2017); *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, No. 14-cv-1734, 2017 WL 747536, at *3 (S.D. Ind. Feb. 27, 2017).

Other federal courts in Indiana and elsewhere have found that their states' deceptive trade practices laws provide the most analogous statutes of limitations. *See Chattanoga Mfg.*, 301 F.3d at 793 (noting the district court applied the 3-year statute of limitations for the Illinois Consumer Fraud and Deceptive Business Practices Act); *Boss Prods., Inc. v. Port-A-Pit Bar-B-Que of Edgerton, Inc.*, No. 05-CV-293, 2009 WL 260793, at *8 (N.D. Ind. Feb. 4, 2009) (applying 2-year statute of limitations for Indiana Deceptive Consumer Sales Act); *see also, e.g.*, *DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837, 854 (6th Cir. 2023) (applying 1-year statute of limitations for Tennessee Consumer Protection Act); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 208 (3d Cir. 2002) (applying 2-year statute of limitations for deceptive trade practice claims under Virgin Islands law); *Davalos v. Baywaych Inc.*, --- F. Supp. 3d ---, 2024 WL 5344434, at *6 (D. Mass. Sept. 30, 2024) (applying 4-year statute of limitations for Massachusetts Consumer Protection

Act); *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 614 F. Supp. 3d 144, 141 (E.D. Pa. 2022) (applying 6-year statute of limitations for Pennsylvania's Unfair Trade Practices and Consumer Protection law); *Sears v. Russell Road Food & Beverage, LLC*, 460 F. Supp. 3d 1065, 1069 (D. Nev. 2020) (applying 4-year statute of limitations for Nevada's deceptive trade practices statute); *CheckPoint Fluidic Sys., Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 781, (E.D. La. 2012) (applying 3-year statute of limitations for Louisiana Unfair Trade Practice and Consumer Protection Act); *Wis. Cheese Grp., Inc. v. V & V Supremo Foods, Inc.*, 537 F. Supp. 2d 994, 1001 (W.D. Wis. 2008) (applying 3-year statute of limitations in Wisconsin Deceptive Trade Practices Act); *Thompson v. Town of Double Springs*, No. CV-04-CO-03056, 2005 WL 8157964, at *1 (N.D. Ala. Aug. 29, 2005) (applying 1-year statute of limitations for Alabama Deceptive Trade Practices Act).

The statute of limitations for claims under the Indiana Deceptive Consumer Sales Act is two years. Ind. Code § 24-5-0.5-5. Both the statute of limitations for claims or injury to personal property and for claims under the Indiana Deceptive Consumer Sales Act are analogous to the Lanham Act, but the Court need not decide which is *most* analogous because both statutes of limitations are two years, so the Court's analysis will be the same under either.[7]

Gema waited more than five years—more than twice the analogous limitations period—after actually learning of FIF's alleged infringement to enforce its rights. *See Noble Roman's*, 2017 WL 747536, at *3 (finding 4-year delay unreasonable); *Barrington Music*, 2017 WL 4683194, at *3 (finding 5-year delay was "more than double the time permitted by Indiana's statute of limitations, giving rise to the presumption of laches"); *see also Ill. Tamale Co. v. El-Greg, Inc.*,

---

[7] Other courts have applied their states' statutes of limitations for fraud. Indiana's statute of limitations for fraud is six years, Ind. Code § 34-11-2-7. However, "whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the sole indicator of whether laches may be applied in a particular case." *Hot Wax*, 191 F.3d at 822. Considering that Gema has had actual knowledge of FIF's alleged misconduct since 2017, gave no reason at all for its delay, and failed to raise any genuine dispute as to prejudice, laches would be appropriate even if the Court applied the six-year statute of limitations. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192, 195 (2d Cir. 1996) (affirming application of laches for 5-year delay, despite applying 6-year statute of limitations for fraud).

No. 16 C 5387, 2018 WL 6590558, at*2 (N.D. Ill. Dec. 14, 2018). (finding 5-year delay unreasonable in light of analogous three-year state statute of limitations and applying laches).

Gema responds that its period of delay runs from the date it first learned of FIF's alleged infringement, not the date it first knew of FIF's existence (Filing No. 92 at 39). But "[r]ather than identifying a specific time that it became aware of the nature of" FIF's infringing activities, *Hot Wax*, 191 F.3d at 823, Gema generally argues that FIF has not identified the point that its conduct became infringing or the point that Gema became aware of the extent of FIF's use of the Gema Trademarks. This argument ignores Gema's own briefs and evidence, which show that FIF has used the Gema Trademarks in substantially the same way since 2016, and Gema has had knowledge of the facts forming the basis of its Lanham Act claims since at least 2017.

When Gema's claim that it had no knowledge of FIF's trademark use "is juxtaposed against" its own statements and correspondence, it appears that Gema's "claim is nothing more than a *post hoc* rationalization for [its] unreasonable delay." *Hot Wax*, 191 F.3d at 823. "[I]t cannot be equitable for a well–informed merchant with knowledge of a claimed invasion of right, to wait to see how successful his competitor will be and then destroy with the aid of court decree, much that the competitor has striven for and accomplished." *Id.* (quotation marks and citation omitted). At least one email ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████ Gema has failed to offer any excuse for its five-year delay in bringing suit against FIF, much less one that overcomes the presumption of laches.

### iii. **Prejudice**

The final element is prejudice resulting from the plaintiff's delay. "A delay prejudices a defendant when the assertion of a claim available for some time would be inequitable in light of the delay in bringing that claim and ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Chattanoga Mfg.*, 301 F.3d at 795. "Prejudice may be shown if the plaintiff's unexcused failure to exercise its rights caused the defendant to rely to its detriment and build up a valuable business around its trademark." *Chattanoga Mfg*, 301 F.3d at 795. The Fifth Circuit, after collecting relevant cases, has held that "undue prejudice means that the defendant has taken steps such as making significant investment decisions or building the bulk of its business based on the reasonable assumption that it had permission to use the plaintiff's marks, and that such investment or capital would be lost if the defendant could no longer use the mark." *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290, 296 (5th Cir. 2015).

FIF argues it has been prejudiced by Gema's delay because it "has built a business on servicing Gema products, selling refurbished Gema products, and selling replacement parts that work with specific Gema products." (No. 85-2 ¶ 12). FIF asserts that if it could "no longer use Gema's trademarks in any manner to promote its services and products, it would need to refocus the entirety of its business." (Filing No. 98 at 21). Gema responds by citing the fact that FIF has altered its use of Gema Trademarks on its website during this litigation yet "is still in business and still apparently has the resources to litigate this case." (Filing No. 92 at 37).

The Court finds that FIF has shown prejudice. As FIF explains, it is not simply a powder coating business; its entire business relates to Gema. It was founded by a former Gema employee

and focuses almost exclusively on the service, repair, sale, and resale of Gema products, Gema equivalents, and parts that work with Gema products. Neither party has identified any portion of FIF's business that is not tied to Gema. Gema itself claims that FIF "has almost exclusively sold Gema-related equipment" and "holds itself out as an expert on Gema equipment" (Filing No. 83 at 15–16), and argues that "FIF was established to profit off the goodwill and consumer recognition [of] Gema," *id.* at 39. It is therefore apparent based on the nature of FIF's business that if it were prohibited from using the Gema Trademarks, it would need to refocus its entire brand, and all of FIF's prior business investments would be lost. *See Pennzoil-Quaker*, 779 F.3d at 299 n. 37 ("We have equated undue prejudice with making major business investments in reliance on the assumption that the defendant could use the mark, which would be lost if the mark could no longer be used, or situations where changing the name of the business would have destroyed the investment of capital in the business." (cleaned up; citations omitted)); *Annie Oakley Enters., Inc. v. Amazon.com*, 559 F. Supp. 3d 780, 799 (S.D. Ind. 2021) (distinguishing case from one "in which [the defendant] invested time and resources into building a brand around the sale of the Accused Products"). And even though FIF's evidence of economic prejudice is relatively limited, laches is a question of degree, and less proof of prejudice is required when prejudice is more likely to have occurred. *Smith v. City of Chicago*, 769 F.2d 408, 410 (7th Cir. 1985); *Hot Wax*, 191 F.3d at 824.

Gema suggests that FIF's lessened use of the Gema Trademarks during litigation shows a lack of prejudice, but this argument has two primary flaws. First, Gema makes clear in its brief that it believes even this lessened use is improper (Filing No. 83 at 7, 16, 32 ("FIF has *and continues to* use Gema's registered trademarks in a way that confuses and misleads customers about its affiliation with Gema. . . . FIF has used identical marks to the Gema Trademarks to sell its knock-off powder coating equipment since at least 2016 *and continues to do so today*. . . . FIF

has *and continues to* use . . . the Gema Trademarks to sell its knock-off powder coating equipment." (emphases added)); Filing No. 92 at 38 (citing Filing No. 82-16 (screenshot of FIF webpage from March 2023); Filing No. 82-17 (same); Filing No. 82-19 (same); and Filing No. 82-20 (same))). And second, the fact that FIF has remained in business and can afford litigation costs does not mean that FIF has not and will not suffer grave economic prejudice if it is required to "disgorge its profits for years of infringing sales that would not have been made had [Gema] acted promptly on the information that was readily available to it." *Noble Roman's*, 2017 WL 747536, at *3.

Gema also argues that its delay did not prejudice FIF because an earlier lawsuit would not have changed FIF's position (Filing No. 92 at 38). This argument is also unpersuasive. For one, the relevant delay is the delay in bringing suit, not "alert[ing]" someone to "concerns." Receiving an email regarding "concerns" and being sued under the Lanham Act are quite different experiences and may motivate different responses. More importantly, as Gema admits, FIF *did* change its position in response to Mr. ███ 2017 email and then again in response to this litigation. Although FIF did not remove all of the Gema Trademarks from its website in 2017, Mr. McClung sent several messages regarding proposed changes to FIF's website intended to resolve Gema's concerns. And, as Gema notes, FIF "made multiple rounds of changes to its website since the filing of this litigation in 2022" (Filing No. 83 at 39; Filing No. 92 at 37 ("[T]his is precisely what FIF appears to have done during the pendency of this litigation. FIF's website no longer prominently features Gema's trademarks at every opportunity.")); *see Wis. Cheese Grp.*, 537 F. Supp. 2d at 1004 ("Had defendant taken legal action against plaintiff within a reasonable time after learning of the alleged infringement, plaintiff 'certainly could have invested its time and money in other areas or simply renamed its products.'" (quoting *Hot Wax*, 191 F.3d at 824)). Gema has therefore failed to raise a genuine dispute as to FIF's prejudice. *Jeffries*, 770 F.2d at 679; *Smith v.*

*Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003) ("[W]hile laches often involves questions of fact, it is nevertheless appropriate for summary judgment where, as here, the facts necessary for determining whether the defendant suffered material prejudice are not genuinely disputed."); *Wis. Cheese Grp.*, 537 F. Supp. 2d at 1004 ("Even without a strong showing of economic prejudice, plaintiff would prevail on this element. As discussed above, because defendant's delay was longer than the limitations period under state law, prejudice to plaintiff is presumed."). Based on the material undisputed facts, FIF has established each of the three requirements for laches.

### b.  Willful Infringement/Unclean Hands

Gema argues that FIF may not invoke laches because it willfully infringed the Gema Trademarks. "A party's unclean hands may stand as an obstacle to the application of the doctrine of laches in certain circumstances." *Hot Wax*, 191 F.3d at 825. Gema contends that Mr. █████ 2017 email "warned FIF that the manner in which it was promoting its products using Gema's trademarks was likely to confuse consumers," but "FIF did not change course in response. . . . FIF did not use Gema's trademarks in good faith; rather, FIF consistently capitalized on the notoriety and good will of Gema's trademarks in connection with the sale of knock-off products and parts." (Filing No. 92 at 41). For the reasons explained above, Gema has failed to show that FIF intended to deceive consumers or that FIF failed to attempt to cure its alleged infringement in response to Mr. █████ 2017 email or this litigation. For these same reasons, Gema has failed to show willful infringement or unclean hands. *See Noble Roman's*, 2017 WL 747536, at *3 (applying laches; "As soon as [plaintiff] notified [defendant] of the problem, it corrected it."); *see also Hot Wax*, 191 F.3d at 826 (stating that a defendant's inability to prove non-infringement on summary judgment "hardly translates into proof of unclean hands sufficient to preclude an application of laches."). Gema has not shown any "willful, egregious, or unconscionable conduct or bad faith" by FIF. *Hot Wax*, 191

F.3d at 826. FIF is therefore not precluded from invoking laches, and FIF's motion is **granted** as to laches. Gema may not recover monetary relief on its Lanham Act claims.

### 3. **Acquiescence**

FIF also asserts the affirmative defense of acquiescence (Filing No. 86 at 38). Because the Court has already determined that the doctrine of laches bars Gema's request for monetary relief, the Court need not, and thus does not, decide whether the doctrine of acquiescence also applies. FIF's motion for partial summary judgment is **denied as moot** as to acquiescence.

## IV. **CONCLUSION**

For the forgoing reasons, both parties' Motions for Partial Summary Judgment (Filing No. 82; Filing No. 85) are **GRANTED in part** and **DENIED in part**.

Gema's Motion (Filing No. 82) is **granted** as to no invalidity of the Gema Patents; **granted** as to infringement of the Gema Patents by Part Nos. 1008070A, 1010160A, 1007931A, 1010754A, 1007935A, 1010090A, 1007683A, 1010752A, 1008151A, 1006530A, 1007780A, and 1010198A; **denied** as to infringement of the Gema Patents by Part Nos. 1010160, 1008140A, 1008145A, 1007780, and 1008726A; and **denied** as to infringement of the Gema Trademarks.

FIF's Motion (Filing No. 85) is **granted** as to the marking statute, 35 U.S.C. § 287(a); **denied** as to the nominative fair use defense; **granted** as to laches; and **denied as moot** as to acquiescence. Gema is **precluded** from recovering monetary damages for infringement of the '080, '015, '365, and '786 Patents that occurred before October 20, 2022, and for infringement of the '740 Patent that occurred before May 22, 2023, pursuant to 35 U.S.C. § 287(a). Gema is also **precluded** from recovering monetary damages for its Lanham Act claims (Counts 5–8) on the basis of laches.

This matter remains set for a final pretrial conference on July 16, 2025, and a jury trial to begin on August 11, 2025. The issues remaining issues for trial are: infringement of the '356 Patent (Count 3) by Part Nos. 1010160, 1008140A, and 1008145A; infringement of the '786 Patent

(Count 4) by Part No. 1007780; infringement of the '740 Patent (Count 9) by Part No. 1008726A; willful infringement of the Gema Patents (Counts 1–4 and 9); Gema's request for injunctive relief and post-suit monetary damages for patent infringement (Counts 1–4 and 9); and Gema's Lanham Act claims (Counts 5–8), only as to injunctive relief.

The parties are **DIRECTED** to contact the Magistrate Judge to schedule a settlement conference.

Finally, because of the nature of some of the matters in this Order, this Order shall **temporarily** be **docketed as a SEALED order**, accessible only to the Court and the parties. The parties are **ORDERED** to confer and agree on a redacted version of this Order that can be filed on the public docket within **<u>fourteen (14) days</u>** of this Order.

**SO ORDERED**.

Date: 3/27/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Riley H. Floyd
HOOVER HULL TURNER LLP
rfloyd@hooverhullturner.com

Michael R. Limrick
HOOVER HULL TURNER LLP
mlimrick@hooverhullturner.com

Caroline L Marsili
Carlson Caspers
cmarsili@carlsoncaspers.com

Hannah Mosby O'Brien
Carlson, Caspers, Vandenburgh & Lindquist, P.A.
hobrien@carlsoncaspers.com

Mark Christopher Reichel
REICHEL STOHRY DEAN LLP
mark@rsindy.com

Bradley M. Stohry
Reichel Stohry Dean LLP
brad@rsindy.com

Erik G. Swenson
Carlson Caspers Vandenburgh & Lindquist P.A.
eswenson@carlsoncaspers.com